UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS BAKER,                    :          NO. 1:07-CV-00286
                                 :
          Plaintiffs,            :
                                 :
     v.                          :          **OPINION AND ORDER**
                                 :
                                 :
MEDTRONIC, INC.,                 :
                                 :
          Defendant.             :


     This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 32), Plaintiff's Memorandum in Opposition
(doc. 42), and Defendant's Response in Support (doc. 44). The
Court held a hearing on this motion on October 30, 2008. For the
reasons indicated herein, the Court GRANTS Defendant's Motion for
Summary Judgment.

**I. BACKGROUND**

     Although the parties have differing interpretations of the
facts of this matter, the facts themselves are largely
undisputed. Plaintiff Dennis Baker ("Baker") was hired as a
sales representative by Defendant Medtronic, Inc. ("Medtronic")
in 1997, when Baker was forty-three (43) years old (doc. 32).
Medtronic is a company that sells medical devices to hospitals
and during his employment Baker sold both a bradycardia product
("Brady") and a tachycardia ("Tachy") pacemaker (doc. 42).
Medtronic hired Baker on a salary plus commission basis and

guaranteed a minimum commission of $25,000 a quarter for a period of twelve months (Id.). During his first three years at Medtronic, supervisors John Hanley and Gary Blaton rated Baker's performance as "commendable" on performance evaluations, although in 2001 Blanton noted that Baker needed to work more closely with his management team (Id.). Pat Brown ("Brown") became District Manager and Baker's supervisor in 2001 (Id.). On Brown's first evaluation of Baker in June 2002, Brown rated Baker overall "as expected" and also commented that Baker needed to work more closely with management (doc. 32). On Baker's June 2003 evaluation he was rated overall as a high contributor, and it was noted that Baker had made 138% of his plan for Brady implants (doc. 42). Brown wrote, however, that Baker had "a negative attitude and does not engage himself in the district" (Id.). At this 2003 evaluation, Brown also told Baker that Medtronic was going to end the $25,000 per quarter guarantee that had originally been extended for Baker's initial twelve months, but which Medtronic had continued paying throughout Baker's employment (Id.).

During this period, Baker felt he was not being given the same support or held to the same expectations as others in the district (Id.). On January 15, 2004, Baker complained to Steve Ruffing in Human Resources that Brown had singled him out for

negative treatment to the point he was considering resignation, and that Baker was concerned that Brown was suggesting a dead end career path at Viatron in an effort to get rid of Baker (Id.). Baker also told Ruffing that whatever Jim Reese ("Reese"), another Sales Representative, wanted, he got (Id.). Jim Reese was born in 1962 (Id.). On January 16, 2004, Darren Roslansky, a senior Human Resources manager informed Brown of Baker's complaints, and on the same day Brown notified Ruffing that Baker was still receiving the $25,000 quarterly guarantees (Id.).

In March 2004, Baker lost one of his biggest accounts, the Greater Cincinnati Cardiac Consultants ("GCCC"), because Medtronic was underbid (Id.). Baker states that he tried to engage Brown's assistance in lowering Medtronic's prices, but that the first proposal only minimally discounted the original prices and GCCC rejected it (Id.). Eventually, the account went to another provider due to price (Id.). Several months later, in his 2004 performance evaluation, Brown placed the onus on Baker for the GCCC loss of business and stated that Baker had trouble with team work (Id.). Baker states that Jim Reese, who was also part of the GCCC sales team, did not receive blame (Id.). In light of the GCCC loss, Brown only increased Baker's sales plan by 2.3% for 2005, rather than the average 13.5% increase for all other Sales Representatives in Brown's territory (doc. 32).

From the second quarter of Medtronic's 2004 fiscal year (August-October 2003) to the first quarter of Medtronic's 2006 fiscal year (May-July 2005), Baker failed to make his Brady sales goal for all eight quarters and failed to make his overall sales revenue goal for seven of the eight quarters (Id.). In Baker's June 2005 evaluation, Brown rated Baker as "needs improvement" and at that time Brown warned Baker that a Performance Improvement Plan ("PIP") would be issued. On September 1, 2005, Brown and Cincinnati district manager Mike Mathias issued the PIP to Baker (doc. 44). The PIP stated that Baker must meet or exceed his total revenue plan for the second quarter ending October 28, 2005, and that Baker had to present a detailed business plan to Mathias by September 8, 2005 (doc. 32). The PIP stated that "[f]ailure to meet and maintain an acceptable level of performance...will result in further disciplinary action up to and including termination" (Id.). Baker wrote in response to the PIP, "I disagree with the need for this PIP and feel I am held to a different set of standards and feel I am discriminated against because of my age and vesting status" (Id.). Senior Human Resource manager Rolansky's brief investigation of the complaint consisted of one unanswered phone call and several pages to Baker's pager (doc. 44).

Baker did not submit the business plan by September 8, 2005,

but did give Mathias the requested plan at some point in September (<u>Id</u>.).  By October 28, 2005, Baker had not met his total revenue plan, but was at almost 94% of his Brady business and almost 81% of his Tachy business (<u>Id</u>.).  At the end of the second quarter, Mathias, Brown, and Roslansky discussed Baker's performance compared to the PIP and agreed to terminate Baker's employment (doc. 32).  Medtronic terminated Baker's employment effective November 11, 2005 (<u>Id</u>.).  Joe Lonnemann, a year and a half younger than Baker, became responsible for 80% of Baker's accounts upon Baker's termination (<u>Id</u>.).

Thereafter, Baker filed a complaint alleging: (1) Age discrimination in violation of the ADEA and Ohio state law; (2) retaliation, (3) benefit discrimination, and (4) public policy (doc. 1).  Defendant seeks summary judgment on each of Plaintiff's claims (doc. 32).

## II. SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; <u>see also</u>, <u>e.g.</u>, <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464 (1962);

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v.

Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary

judgment and proceed to trial on the merits. <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 339-40 (6th Cir. 1993); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324; <u>Guarino</u>, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." <u>Guarino</u>, 980 F.2d at 405, <u>quoting</u> <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. <u>See</u> <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. <u>See</u> <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. <u>See</u> <u>Matsushita</u>, 475 U.S.

at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. DISCUSSION

Defendant seeks summary judgment on each of Plaintiff's claims (doc. 32). The Court will discuss each argument in turn.

### A. Plaintiff's Age Discrimination Claim

#### 1. Plaintiff's Prima Facie Case

Both the Age Discrimination in Employment Act ("ADEA") and Ohio law prohibit discrimination on the basis of age in employment decisions. 29 U.S.C.A. §§ 621 et seq., O.R.C. § 4112.02(A). Baker presents no direct evidence of age discrimination. Therefore, in order to prevail on an indirect or circumstantial evidence theory, Baker must establish a prima facie case of age discrimination by proving that (1) he was over forty, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee or additional evidence shows that the employer was motivated by Baker's age in making its decision. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). The prima facie case "raises an inference of

discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 577 (1978). Establishment of the <u>prima facie</u> case in effect creates a presumption that the employer unlawfully discriminated against the employee. <u>Texas Dep't. Of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

There is no dispute that Baker meets the first three prongs. However, Medtronic argues that Baker cannot establish a <u>prima facie</u> case because he was neither replaced by a substantially younger employee nor was he treated less favorably than similarly situated non-protected employees (doc. 32). First, Medtronic contends that Baker was not replaced by a substantially younger employee because noone was hired to replace Baker, and eighty percent of Baker's accounts were reassigned to Joe Lonnemann, who is only a year and a half younger than Baker (<u>Id</u>., citing <u>Grosjean v. First Energy Corp</u>. 349 F.3d 332, 340 (6th Cir. 2003) (an age difference of six years or less between an employee and a replacement is not significant)). Second, Medtronic argues that there is no evidence of different treatment for similarly situated sales persons because no other sales representatives performed as poorly as Baker, who failed to meet his sales goals for eight quarters in a row before September 2005 (<u>Id</u>., citing

<u>Swanson v. McKesson Corp.</u>, 2006 U.S. Dist. LEXIS 1512, *17-18
(S.D. Ohio)).

In response, Baker does not contend that he was replaced by
a substantially younger employee but does argue that he can
establish favorable treatment of similarly situated individuals
(doc.42). Baker argues that he must only prove that one or more
employees, not in the protected group, who had engaged in acts of
"comparable seriousness...were nevertheless retained or rehired"
(<u>Id</u>., quoting <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S.
273, 282 (1976)). Baker avers that a jury might find that Reese,
eight years younger than Baker, was treated more favorably,
because Reese also intermittently failed to meet his yearly sales
goals and in 2006 did not meet his revenue plans for any of the
four quarters, yet Reese received professional support not
offered to Baker (<u>Id</u>.). Further, Baker contends that although
both he and Reese were assigned to the GCCC account, only Baker
was blamed for its loss (<u>Id</u>.).

Drawing all reasonable inferences in favor of Baker, the
Court finds that a reasonable jury could conclude that Baker was
treated less favorably than younger, similarly situated sales
persons. The Sixth Circuit has explained that "the plaintiff and
the employee with whom the plaintiff seeks to compare himself
must be similar in all of the <u>relevant</u> aspects" in order for the

two to be similarly-situated. Johnson v. Kroger, 319 F.3d 858, 867 (6ht Cir. 2003) (quoting Erceqovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998) (emphasis in original) (internal quotation marks omitted)). In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct. Ereceqovich, 154 F.3d at 352 (noting that "[t]hese factors generally are all relevant considerations in cases alleging differential disciplinary action"). But the weight to be given to each factor can vary depending upon the particular case. Id. (explaining that courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee").

In Swanson, 2006 U.S. Dist. LEXIS 1512 at *6, the Honorable Sandra Beckwith found that sufficient evidence of favorable treatment of similarly situated employees existed where younger salespeople were assigned more lucrative accounts than the plaintiff, and where younger salespeople who had not met sales goals were not put on PIPs while the plaintiff was. Id. Similarly here, a jury could reasonably find the younger Reese was treated more favorably from the evidence presented that

despite similar, though not identical, failings, Reese was given support that Baker was not, and that Reese was not held responsible for the GCCC loss while Baker was. Therefore, the Court finds that like the plaintiff in _Swanson_, Baker can establish a _prima facie_ case of age discrimination. _Id_.

## 2. The Legitimacy of the Termination Claim

The burden now shifts to Medtronic to rebut the presumption of discrimination by producing evidence that Baker was terminated, or someone else was preferred, for a legitimate, nondiscriminatory reason. _Burdine_, 450 U.S. at 254. Medtronic need not persuade the Court that it was actually motivated by the proffered reasons. _Id._, _citing_ _Board of Trustees of Keene State College v. Sweeney_, 439 U.S. 24, 25 (1978).

It is sufficient if a defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff _Id._ To accomplish this, a defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's termination. _Id._ at 255. The explanation provided must be legally sufficient to justify a judgment for the defendant. _Id._ If a defendant carries this burden of production, the presumption raised by the _prima facie_ case is rebutted, and the factual inquiry proceeds to a new level of specificity. _Id._ Placing this burden of production on the

defendant thus serves simultaneously to meet the plaintiff's _prima_ _facie_ case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. _Id._ at 255-56. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions. _Id._ at 256.

Medtronic notes that there is no dispute that Baker failed to satisfy his sales goals for eight quarters before being placed on the PIP, that the PIP warned him that failure to satisfy its requirements could result in termination, and that Baker failed to satisfy the PIP requirements (doc. 32). Medtronic argues that Baker's poor sales performance and poor performance while on the PIP are legitimate non-discriminatory reasons for adverse employment actions (_Id._, citing _Swanson_, 2006 U.S. Dist. LEXIS 1512 at *19-20). The Court agrees and finds that a reasonable jury could determine that Medtronic articulates a legitimate, non-discriminatory reason for Baker's termination (_Id._).

### 3. **Defendant's Articulated Reason as Pretext**

The plaintiff retains the burden of persuasion. _Manzer v. Diamond Shamrock Chemicals Co._, 29 F.3d 1078, 1084 (6th Cir. 1994). Once a legitimate reason for termination is presented, a plaintiff must have the opportunity to demonstrate that the

defendant's proffered reason was not the true reason for the employment decision. <u>Wilson v. Firestone Tire & Rubber Co.</u>, 943 F.2d 510, 517 (6th Cir. 1991). A plaintiff can prove pretext by showing that 1) the articulated reasons are not supported by the facts as revealed by the evidence; 2) the articulated reason or reasons did not actually motivate the termination; or 3) the articulated reasons were insufficient to warrant the termination. <u>Manzer</u>, 29 F.3d at 1084.

Baker argues that he presented "sufficient evidence to demonstrate a question as to the factual basis for Medtronic's articulated reason and whether that reason was sufficient to motivate the termination decision" (doc. 42). Baker first argues that a jury could consider Brown's negative response to Baker's January 2004 complaints as well as Roslansky's failure to investigate as evidence that these complaints, not Baker's sales performance, motivated the termination decision (<u>Id</u>.). Baker also contends that a jury could conclude that his termination was not the result of his failure to meet his sales goals by looking at Baker's success over his long career, and the fact that he had reached 94% of his sales goals when he was terminated (<u>Id</u>.). Finally, Baker argues that a jury could conclude that the events preceding the loss of Baker's biggest account, and Brown's alleged complicity in the loss is evidence that Brown used this

loss as pretext for the termination decision (Id.).

The Court does not find Baker's arguments well-taken. Baker has not presented evidence, beyond speculation, to support any of his theories that Medtronic's reasons for termination are pretext. Baker cannot claim that Medtronic's articulated reasons for termination are unsupported by the facts, nor that the reasons were insufficient to warrant the decision, because Baker admits to the conduct that Medtronic sets forth as its reasons for firing Baker. There is no dispute that from the second quarter of Medtronic's 2004 fiscal year (August-October 2003) to the first quarter of Medtronic's 2006 fiscal year (May-July 2005), Baker failed to meet his Brady goal for all eight quarters and failed to meet his overall revenue goal seven of eight quarters (doc. 32). There is no question that Baker was the only employee who failed to meet sales goals for eight quarters in a row before September 2005 (Id.). Likewise, there is no dispute that on his 2005 evaluation Baker was rated as needing improvement and told that a PIP would follow, or that on September 1, 2005, Baker was placed on a PIP (Id.). The PIP stated that Baker had to present a detailed business plan by September 8, 2005, and had to meet or exceed his total revenue plan for the second quarter ending October 28, 2005, and warned that "[f]ailure to meet and maintain an acceptable level of

performance...will result in further action up to and including termination" (Id.). Baker does not contend that he complied with the PIP, and instead admits that he failed to meet his total revenue for the second quarter and failed to submit a detailed business plan by September 8, 2005 (Id.). On October 28, 2005 Baker was terminated.

Given Baker's admissions, he cannot now claim that the evidence does not support Medtronic's purported reason for termination. Baker presents no evidence to the contrary to suggest that his age played a role in Medtronic's decision. The Court therefore finds that because Baker has not shown that the reasons given for his termination were pretextual, summary judgment is appropriate on Baker's age discrimination claims.

**B. Baker's Retaliation Claim**

Even though Baker's age discrimination claim fails, he may still prevail on his retaliation claim. Age discrimination retaliation claims asserted under either state or federal law are subject to the McDonnell Douglas burden-shifting analysis. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). To establish a prima facie case of retaliation under the McDonnell Douglas framework, a plaintiff must prove (1) that he engaged in protected activity; (2) that the exercise of plaintiff's rights was known to the defendant; (3) that plaintiff

17

was the subject of an adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. <u>Id</u>.

As instances where he engaged in a protected activity, Baker points to the complaint he made to HR about Brown in January 2004 that he was being singled out for negative treatment, expressed concern that Brown was suggesting a dead end career path at Vaitron in an effort to get rid of him, and told Mr. Ruffing "what Jim Reese wants, he gets"(doc. 42). Baker also notes his complaint about age discrimination in September 2005 where he wrote on his PIP, "I disagree with the need for this PIP and feel I am held to a different set of standards and feel I am discriminated against because of my age and vesting status" (<u>Id</u>.).

## 1. January 2004 Conversation with Ruffing

Medtronic argues that as a matter of law the January 2004 conversation was not a protected activity because it was a vague complaint that did not refer to age discrimination (doc. 44, citing <u>Fox v. Eagle Distributing Co., Inc.</u>, 510 F.3d 587, 591-92 (6th Cir. 2002)).

The Court agrees. An employee need not file a formal EEOC complaint to engage in protected activity-rather "it is the assertion of statutory rights" that triggers protection under the

ADEA's anti-retaliation provision. EEOC v. Romeo Community Schs.,
976 F.2d 985, 989 (6th Cir. 1992) (citing Love v. RE/MAX of
America, Inc., 738 F.2d 383, 387 (10th Cir.1984)). However, "in
order to receive protection under the ADEA, a plaintiff's
expression of opposition must concern a violation of the ADEA."
Fox, 510 F.3d at 591, (citing Booker v. Brown & Williamson
Tobacco Co., 879 F.2d 1304, 1313 (6th Cir.1989) (holding that
employee's allegation that manager is a racist is not protected
activity under the ADEA because "the allegation is not that Brown
& Williamson is engaging in unlawful employment practice, but
that one of its employees has a racial intolerance" and that
charge of "ethnocism" is too vague to constitute opposition to an
unlawful practice)).  See also Willoughby v. Allstate Ins. Co.,
104 Fed.Appx. 528, 531 (6th Cir.2004) (rejecting claim that
letter sent preceding retaliation constituted protected activity
where letter made vague references to unhappiness among Caucasian
employees); Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02
(3d Cir.1995) (holding that plaintiff's letter to Human Resources
complaining about unfair treatment in general was not protected
activity under the ADEA because letter did not specifically
complain about age discrimination).  In his deposition, Baker
described the January 2004 conversation as such:

Q. Tell me what you told Ruffing at the time.

A. I told him that I was tired of being picked on by Mr. Brown, that I was a good employee, I worked hard every day, I continue to work hard and it was one thing after another.

Q. Anything else you told Mr. Ruffing?

A. There was a suggestion that – at one time – I join Vitatron, which I knew was a dead end. And that concerned me rather than sticking with Medtronic. I think it was a way for Mr. Brown to get rid of me.

Q. Was there anything else in your conversation with Mr. Ruffing that you haven't told me here?

A. No.

(doc. 44). The facts here are analogous to those in <u>Fox</u> where the Sixth Circuit found the plaintiff's complaint that management was "out to get him" insufficient to constitute opposition to an unlawful employment practice, noting that there was no evidence of any discussion of age discrimination. 510 F.3d at 592 (citing <u>Brown & Williamson Tobacco Co.</u>, 879 F.2d at 1313). Here, similarly, the record does not contain evidence that Baker specifically alleged discriminatory employment practices in his January 2004 discussion with Ruffing. The conversation made no mention of age or age discrimination, and even construed most favorably towards Baker, constitutes a complaint about unfair treatment from Baker's manager and not opposition to an unlawful employment practice.

**2. September 2005 notation on the PIP**

Medtronic further argues that Baker cannot establish the forth prong of a _prima_ _facie_ case of retaliation as to the September 2005 notation because Baker cannot prove that causal link existed between the notation and his termination (doc. 32). Medtronic notes the PIP, which put Baker on notice that he would be terminated if he failed to meet the conditions, was in place before the notion was made (doc. 32). Medtronic argues that "since it was not retaliation when Medtronic told Baker he would be terminated if he did not meet the conditions of the [PIP], it cannot be retaliation when Baker later failed to meet the conditions and suffered the consequences that Medtronic had lawfully warned would occur (doc. 44, citing Clark County School District v. Breeden, 532 U.S. 268 (2001)). Baker argues that the temporal proximity between the notation in September 2005 and his termination two months later is sufficient to establish a causal connection (doc.42, citing Singfield v. Akron Metropolitan Housing, 389 F.3d 555, 563 (2004)).

The Court finds Medtronic's argument well-taken.  In Clark County School District v. Breeden, 532 U.S. 268 (2001), where the defendant had considered transferring the plaintiff before the plaintiff filed her lawsuit, but consummated the transfer after the filing, the Supreme Court held "proceeding upon lines previously contemplated, though not yet definitively determined,

is no evidence whatever of causality." Id. at 272.  Similarly, in

Reynolds v. Extendicare Health Services, Inc., 257 Fed. Appx. 914

(6th Cir. 2007), the Sixth Circuit found that where the decision

to place the plaintiff on a PIP was made one week prior to the

protected action, plaintiff's placement on the PIP after the

protected action could not be viewed as causally related. Id. at

920 (citing Breeden, 532 U.S. at 272).  So too here, Baker cannot

establish a causal connection between the notation alleging age

discrimination that he made on his PIP in September 2005 and his

termination after failing to meet the requirements of the PIP in

November 2005.  The PIP, with clearly established consequences,

was in place before Baker made the notation, and therefore his

subsequent termination for failure to comply with the PIP, even

if temporally proximate, cannot constitute causal connection. See

Reynolds, 257 Fed. Appx. at 920-21 (finding that contemplation of

the adverse employment action before the protected activity

negated any temporal proximity between the protected activity and

adverse employment action).

Therefore, because Baker cannot establish a prima facie case

of retaliation, Medtronic is entitled to summary judgment on this

claim.

### C. Baker's Benefit Discrimination Claim

An employer may not "discriminate against a [benefits plan]

participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Baker's claim is that Medtronic granted retirement related benefits to its employees, and Medtronic knowingly terminated Baker's employment to avoid the vesting of these benefits (doc. 1). However, Baker admitted in his deposition, and has offered no evidence to suggest otherwise, that at the time Baker was terminated he was wholly vested in his Medtronic retirement account (doc. 32). Therefore, the Court finds that summary judgment on this claim is appropriate.

### D. Plaintiff's Public Policy Claim

The Court finds Baker's Ohio public policy claim controlled by the holding in <u>Carrasco v. NOAMTC, Inc.</u>, in which the Sixth Circuit found that Title VII and Ohio Rev. Code § 4112 provide adequate remedies to vindicate Ohio's public policies against unlawful employment discrimination, and therefore such claims are precluded under Ohio law. 124 Fed. Appx. 297, 304 (6th Cir. 2004) (interpreting the Ohio Supreme Court's ruling in <u>Wiles v. Medina Auto Parts</u>, 96 Ohio St. 3d 240, 773 N.E.2d 526, 530 (2002) (citations omitted) to bar public policy claims where there exists a statutory remedy that adequately protects society's

23

interests), <u>see</u> <u>also</u> <u>James v. ABX Air, Inc.</u>, 2006 U.S. Dist. LEXIS 16979, No. 1:03-CV-00480, at *10, (S.D. Ohio, March 23, 2006)(Spiegel, J.), <u>Stang v. Deloitte & Touche</u>, Case No. 2:05-CV-590, 2006 U.S. Dist. LEXIS 16444, *9 (S.D. Ohio, April 5, 2006). Accordingly, the Court finds it appropriate to grant Medtronic summary judgment on Baker's Ohio public policy claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Medtronic, Inc.'s Motion for Summary Judgment (doc. 32).


           SO ORDERED.


Dated: April 2, 2009          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge